IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD HUSTON AYCOCK,** | : | |
| Plaintiff | : | No. 1:25-cv-01086 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **C.O. STEINCAMP, et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

Currently before the Court are an application for leave to proceed in forma pauperis and complaint filed by pro se Plaintiff Richard Huston Aycock ("Aycock"). For the reasons set forth below, the Court will grant Aycock leave to proceed in forma pauperis and dismiss the complaint without prejudice to him filing an amended complaint.

**I.     BACKGROUND**

Aycock, a convicted and sentenced state prisoner, commenced this action by filing a complaint that the Clerk of Court docketed on June 16, 2025. (Doc. No. 1.) Aycock did not, however, remit the filing fee or seek leave to proceed in forma pauperis when filing his complaint. As such, an Administrative Order issued requiring him to either remit the fee or apply for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 4.) Aycock's application for leave to proceed in forma pauperis ("IFP Application") and certified prisoner trust fund account statement were timely docketed on July 7, 2025. (Doc. Nos. 5, 6.)

In his complaint, Aycock names the following correctional staff at Pennsylvania State Correctional Institution Benner Township ("SCI Benner Twp.") as Defendants: (1) C.O. Steincamp ("Steincamp"); (2) C.O. Johnson ("Johnson"); (3) C.O. Husted ("Husted"); and (4) Sergeant Bloom ("Bloom"). (Doc. No. 1 at 1–3.) Aycock alleges that while incarcerated at SCI

Benner Twp. on March 17–18, 2024, Defendants subjected him to "retaliation, physical and verbal abuse, mental and non-verbal abuse, [and] cruel and unusual punishment."[1] See (id. at 4).

More specifically, Aycock avers that on March 17, 2024, Defendants Steincamp, Johnson, and Bloom told him that "two [correctional officers] was tooken [sic] to the hospital because [Aycock] was playing, which [Aycock] dont [sic] have no knowledge of at all." See (id.). Then, when he woke up in the morning on the following day, Defendants told him to "cover up [his] cell so [he] can be sprayed and killed" and informed Aycock if he did not do so he would be a "b---- [sic]." See (id.). Later, during Aycock's morning meal, Husted told him to "watch what[ is] going to happen to [Aycock] for playing games and putting [Husted's correctional officers] in the hospital." See (id.).

Eventually, Aycock was searched and transported to a surveillance cell before being transported to "cell JA-130," where, unlike the other inmates in that area of the prison, he could not view the television. See (id.). While in his new cell, Aycock was "told to die or we are going to kill you because the [correctional officers] went to the hospital."[2] See (id.). Aycock "was left to sleep with just [his] jumpsuit" and nothing else, and he had to "use [his] jumpsuit bottom cuff to wipe after using the bathroom." See (id.). In addition, Aycock "was ignored and given nothing [until] the next day[,] which is on video footage after speaking with . . . Captain Stavola." See (id.).

---

[1] Aycock initially states that the events at issue occurred on March 18, 2024. (Id.) However, and as explained infra, Aycock seemingly describes events occurring over the course of two (2) days. (Id.) Thus, the Court construes Aycock's factual allegations as occurring from March 17–18, 2024.

[2] It is unclear whether Aycock refers to Defendants when using the pronoun "we."

Based on these factual allegations, Aycock raises claims under 42 U.S.C. § 1983 against Defendants for violations of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. (Id. at 5.) He appears to assert that Defendants violated his Eighth Amendment rights by failing to protect him from physical abuse despite knowing that "there was a substantial risk that [he would] be harmed." See (id.). Aycock also alleges that Defendants violated the Eighth Amendment by "respond[ing] and fail[ing] to protect him." See (id.). He further alleges that Defendants violated his "right to be free from [d]iscrimination" and "right to be free from retaliation." See (id.).

Aycock indicates that he experienced "harm toward injury [sic] that was a torn rotator cuff in shoulder" and mental distress due to the verbally threatening "gestures" of "death or being killed by officers or correctional officers." See (id.). For relief, Aycock seeks compensatory and punitive damages. (Id.)

## II.   LEGAL STANDARDS

### A.   Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[3] See id. This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.

---

[3] While the Court recognizes that Aycock is incarcerated, "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake. In forma pauperis status is afforded to all indigent persons, not just prisoners." See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

> [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

**B.     The Court's Screening of the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in

4

forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of

5

action" will not survive a district court's screening under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

C.     **Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### III.   DISCUSSION

#### A.   The IFP Application

After reviewing the IFP Application as well as Aycock's certified prison trust fund account statement, it appears that he is unable to pre-pay the costs of this civil rights action. Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis in this case.[4]

#### B.   Screening of Plaintiff's Claims

##### 1.   Retaliation

Aycock asserts that Defendants unlawfully retaliated against him. (Doc. No. 1 at 5.) Although unclear, it appears that Aycock believes that Defendants retaliated against him by threatening him and then placing him in a cell where all he had was the "jumpsuit" he was wearing, in response to him previously assaulting other correctional officers. See (id. at 4). As explained below, Aycock has failed to assert a plausible retaliation claim against Defendants.

---

[4] However, because Aycock is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the PLRA, regardless of the outcome of this action. See 28 U.S.C. § 1915(b).

The Court construes Aycock's retaliation claim as a First Amendment claim. To plead a plausible First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]." See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). As for the first element of a plaintiff's retaliation claim, the filing of lawsuits and prison grievances constitutes activity protected by the First Amendment. See id. (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's retaliation claim, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]" See Mitchell, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)). However, to be actionable under Section 1983, the alleged adverse action must be more than de minimis. See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct

8

"need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's retaliation claim, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." See Watson, 834 F.3d at 422. The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted).

In this case, Aycock fails to allege facts demonstrating that he engaged in any constitutionally protected activity that led to Defendants threatening him or placing him in a different cell. Instead, he avers that Defendants threatened him and placed him in a different cell because he previously assaulted other correctional officers. Such alleged behavior is not protected activity under the First Amendment. Accordingly, the Court will dismiss Aycock's First Amendment retaliation claim for the failure to state a claim.

### 2. Discrimination

Aycock asserts that Defendants discriminated against him. (Doc. No. 1 at 5.) The Court construes this claim as a "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment. Construed as such, Aycock has not pleaded a plausible claim for relief.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. See U.S. Const. amend. XIV, § 1; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v.

9

Doe, 457 U.S. 202, 216 (1982)). "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that [they were] intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). To be "similarly situated," parties must be "alike in all relevant aspects." See Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008).

In this case, Aycock fails to plead a plausible equal protection claim against Defendants because he does not allege any facts showing that he was treated differently than other similarly situated individuals. Instead, he only indicates in a conclusory statement that Defendants somehow discriminated against him. Moreover, considering that Aycock alleges that he was placed in a different cell because he previously assaulted other correctional officers, he does not state facts that would plausibly demonstrate that Defendants lacked a rational basis to place him in the cell. Therefore, the Court will dismiss Aycock's equal protection claim for the failure to state a claim.

### 3. Eighth Amendment

The Court understands Aycock to be asserting two (2) Eighth Amendment claims. First, Aycock states that Defendants threatened to harm or kill him because he previously assaulted other correctional officers. (Doc. No. 1 at 4.) In this regard, Aycock avers that upon waking up on March 18, 2024, Defendants told him to "cover up [his] cell so [he] can be sprayed and killed," and stated that Aycock would "be a b---- [sic] if [he did not] do it." See (id.). He also alleges that during his morning meal Husted told Aycock to "watch what [was] going to happen to [him] for playing games and putting [Husted's correctional officers] in the hospital." See

(id.). Finally, he alleges that he "was told to die or we are going to kill [him] because the [correctional officers] went to the hospital." See (id.).

Second, Aycock asserts that he was subjected to cruel and unusual conditions of confinement when he was moved to a different cell at SCI Camp Hill. (Id.) While in this cell, Aycock (1) could not see the television, (2) "was left to sleep [in the cell] with just [his] jumpsuit [and] nothing else in [his] cell," (3) had to use the bottom cuff of his jumpsuit to wipe himself after using the bathroom, and (4) was "given nothing [until] the next day." See (id.).

As explained below, these are implausible Eighth Amendment claims. Therefore, the Court will dismiss them.

### a.   Violent Threats

"It is well-settled that the use of words, no matter how violent or harsh, do not amount to a violation of the prisoner's civil rights by [a correctional] officer." Svirbley v. McGinley, No. 17-cv-2292, 2018 WL 638475, at *3 (M.D. Pa. Jan. 31, 2018) (citations omitted); see also Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (unpublished) (indicating that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under [Section] 1983" (citations omitted)); Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (unpublished) (concluding that state prison employees were entitled to summary judgment on plaintiff's claim that they "threatened him by telling him to give up his legal campaign[] and by remarking that he was a marked man and that his days were numbered," because "verbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment" (citations omitted)); Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004) (unpublished) ("It is well established that '[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under [Section] 1983.'" (first alteration in original) (quoting

Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996))); McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (concluding that defendant correctional officer's threat to spray inmate with mace did not violate Eighth Amendment); Fennell v. Horvath, No. 18-cv-04870, 2019 WL 161733, at *4–5 (E.D. Pa. Jan. 9, 2019) (dismissing inmate's claim that correctional officer violated his Eighth Amendment rights by, inter alia, threatening to kill his family and use a mace gun against him" because he did not also "allege injury or physical damage").  However, "[v]erbal threats, with some reinforcing act accompanying them, may state a constitutional claim."  See Lewis v. Wetzel, 153 F. Supp. 3d 678, 698 (M.D. Pa. 2015).  "For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words."  Id. (citations omitted).

Here, Aycock does not allege that Defendants committed any reinforcing act accompanying any threats to harm or kill him other than when he was placed in a different cell.  This is not the type of act that could follow a threat and constitute a plausible constitutional claim.  Even if it could, Aycock does not allege that Defendants were the individuals who moved him into the other cell.  He also does not allege that his transfer to the new cell followed any of the alleged threats.  Accordingly, Aycock fails to state a plausible Eighth Amendment claim against any Defendant based on their alleged threats to him, and the Court will dismiss this claim.

### b.    Conditions of Confinement

A plaintiff advancing an Eighth Amendment conditions of confinement claim must allege facts showing that: (1) they suffered a "sufficiently serious" deprivation; and (2) the prison official defendant had a sufficiently culpable state of mind.  See Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2022) (quoting Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020)).  The first

element is an objective standard requiring allegations that the plaintiff was denied "the minimal civilized measures of life's necessities." See id. (quoting Wilson v. Seiter, 501 U.S. 294, 299 (1991)). It is not enough to allege for a plaintiff to allege that they were uncomfortable. See id. Rather, the plaintiff must allege that the conditions of their confinement posed a "substantial risk of serious harm" to their health or safety. See id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The second element is subjective and requires allegations that the defendant was deliberately indifferent to a substantial risk of serious harm to the plaintiff's health or safety. See id. (citing Farmer, 511 U.S. at 834). This requires allegations that the defendant was aware of the risk and disregarded it. See id. (citing Beers-Capitol v. Wetzel, 256 F.3d 120, 133 (3d Cir. 2001)).

In this case, Aycock's allegation that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in a cell without a view of the television for what appears to be no more than approximately one (1) day is insufficient to allege a plausible constitutional violation. See Fantone v. Herbik, 528 F. App'x 123, 128 n.5 (3d Cir. 2013) (unpublished) (agreeing with district court that prison officials depriving prisoner of access to a television for forty-six (46) days was insufficient to state a plausible claim under the Eighth Amendment); Morse v. Harry, No. 24-cv-01468, 2024 WL 4593000, at *3 (M.D. Pa. Oct. 28, 2024) (concluding that prisoner's claim that his cell, inter alia lacked "'media stimulation' for a period of 24 hours" was "nothing more than [a] trivial annoyance[] that do[es] not violate the Eighth Amendment" (citation omitted)), appeal dismissed, 2025 WL 1556003 (3d Cir. Mar. 24, 2025); Hutchinson v. Northampton County Prison, No. 22-cv-02652, 2023 WL 205103, at *6 (E.D. Pa. Jan. 17, 2023) (dismissing prisoner's Eighth Amendment conditions of confinement claim because "the absence of a television or vending machine does not constitute the denial of

'the minimal civilized measure of life's necessities" (citations omitted)); Clinton v. Camp Hill Prison, No. 11-cv-02200, 2012 WL 315279, at *5 (M.D. Pa. Jan. 11, 2012) ("[C]onsistent with settled case law, [an inmate] has not constitutional right to watch cable TV in [their] cell." (alterations in original)), report and recommendation adopted, 2012 WL 315098 (M.D. Pa. Feb. 1, 2012). Similarly, Aycock's allegation that he did not have toilet paper in his cell for a temporary period does not rise to an Eighth Amendment violation. See Easley v. Tritt, No. 17-cv-00930, 2021 WL 978815, at *11 (M.D. Pa. Mar. 16, 2021) ("The Third Circuit has noted that the temporary denial of toilet paper does not violate the Eighth Amendment." (citing Brooks v. Bledsoe, 682 F. App'x 164, 170 (3d Cir. 2017) (unpublished); Freeman v. Miller, 615 F. App'x 72, 77 (3d Cir. 2015) (unpublished))). Moreover, Aycock's allegation that his cell lacked a mattress does not constitute an Eighth Amendment violation. See id. ("[T]he denial of clothing and a mattress for short periods of time does not rise to the level of an Eighth Amendment violation." (citations omitted)); see also Freeman, 615 F. App'x at 77 (concluding that denial of clothing and mattress to inmate for seven (7) days did not violate the Eighth Amendment); Adderly v. Ferrier, 419 F. App'x 135, 139–40 (3d Cir. 2011) (unpublished) (same). Overall, Aycock does not allege sufficient facts demonstrating that he was denied the minimal civilized measures of life's necessities and, even if he did, he does not allege facts showing that Defendants were deliberately indifferent to a substantial risk of serious harm to Aycock's health or safety. Accordingly, the Court will also dismiss this Eighth Amendment claim.

### C. Leave to Amend

Having determined that Aycock's Section 1983 claims are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend

would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the Court's analysis above as well as the factual nature of Aycock's claims, it is uncertain that he will be able to allege sufficient facts to state plausible First, Eighth, or Fourteenth Amendment claims against any Defendant in this case.  Nevertheless, because Aycock has not had the opportunity to file an amended complaint and because the Court cannot conclusively state at this time that any amendment would be futile, Aycock will be granted leave to file an amended complaint in this case.

## IV.   CONCLUSION

For the reasons stated below, the Court will grant the IFP Application and dismiss the complaint without prejudice to Aycock filing an amended complaint.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania