IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD HUSTON AYCOCK,      :
     Plaintiff               :          No. 1:25-cv-01086
                         :
     v.                  :         (Judge Kane)
                         :
C.O. STEINCAMP, <u>et</u> <u>al.</u>,      :
     Defendants           :

<u>MEMORANDUM</u>

Currently before the Court is the amended complaint filed by pro se Plaintiff Richard Huston Aycock ("Aycock"). For the reasons set forth below, the Court will dismiss the amended complaint with prejudice.

I.      BACKGROUND

Aycock, a convicted and sentenced state prisoner, commenced this action by filing a complaint that the Clerk of Court docketed on June 16, 2025. (Doc. No. 1.) Aycock did not, however, remit the filing fee or seek leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> when filing his complaint. As such, an Administrative Order issued requiring him to either remit the fee or apply for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> within thirty (30) days. (Doc. No. 4.) Aycock's application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP Application") and certified prisoner trust fund account statement were timely docketed on July 7, 2025. (Doc. Nos. 5, 6.)

In Aycock's complaint, he named the following correctional staff at Pennsylvania State Correctional Institution Benner Township ("SCI Benner Twp.") as Defendants: (1) C.O. Steincamp ("Steincamp"); (2) C.O. Johnson ("Johnson"); (3) C.O. Husted ("Husted"); and (4) Sergeant Bloom ("Bloom").[1] (Doc. No. 1 at 1–3.) Aycock generally alleged that while

---

[1] Aycock is currently incarcerated at Pennsylvania State Correctional Institution Phoenix.

incarcerated at SCI Benner Twp. from March 17–18, 2024, Defendants threatened him because he caused two (2) correctional officers to go to the hospital. (Id. at 4.) Defendants also told him to cover up his cell so they would have to enter it, spray him, and kill him. (Id.) Later, he was transferred into a cell in which he, inter alia, could not view the television, was left to sleep with only his jumpsuit, and had to use his jumpsuit to wipe after using the bathroom. (Id.)

Based on these allegations, Aycock raised claims under 42 U.S.C. § 1983 against Defendants for violations of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. (Id. at 5.) He also asserted that Defendants retaliated and discriminated against him. (Id.) Aycock indicated that he experienced "harm toward injury [sic] that was a torn rotator cuff in shoulder" and mental distress due to the verbally threatening "gestures" of "death or being killed by officers or correctional officers." See (id.). For relief, Aycock sought compensatory and punitive damages. (Id.)

The Court reviewed Aycock's IFP Application and screened his complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, after which the Court issued a Memorandum and Order on July 25, 2025, granting the IFP Application and dismissing the complaint without prejudice to Aycock filing an amended complaint within thirty (30) days. (Doc. Nos. 7, 8.) In dismissing Aycock's claims in the complaint, the Court construed his retaliation and discrimination claims as arising under the First and Fourteenth Amendments, respectively. (Doc. No. 7 at 7–10.) The Court explained that Aycock failed to plead a plausible First Amendment retaliation claim because he did not allege that he engaged in any constitutionally protected conduct, and he did not plead a plausible Fourteenth Amendment equal protection claim because, inter alia, there were no factual allegations in the complaint demonstrating that he was treated differently from other similarly situated individuals. (Id. at 9, 10.)

2

As for Aycock's Eighth Amendment claims, the Court interpreted the complaint as containing two (2) claims: a claim based on Defendants' threats to spray, harm, or kill him because of what he did to two (2) other correctional officers; and a claim that he was subjected to cruel and unusual conditions of confinement in his cell. (Id. at 10–11.) The Court dismissed Aycock's first Eighth Amendment claim because Defendants' threats of violence, without any alleged reinforcing acts, were insufficient to plead a plausible claim for a constitutional violation. (Id. at 11–12.) The Court also dismissed Aycock's second Eighth Amendment claim because he failed to allege facts showing that he suffered a sufficiently serious deprivation of the minimal civilized measures of life's necessities in his cell or that Defendants were deliberately indifferent to a substantial risk to of serious harm to his health or safety. (Id. at 12–14.)

Aycock has timely complied with the Court's July 25, 2025 Memorandum and Order by filing the instant amended complaint, which the Clerk of Court docketed on August 22, 2025. (Doc. No. 9.) In the amended complaint, Aycock again names Steincamp, Johnson, Husted, and Bloom as Defendants. (Id. at 1–3.) Additionally, Aycock now specifies that his legal claims pertain to events that allegedly occurred at SCI Benner Twp. from March 18–19, 2024. (Id. at 5.)

Aycock avers that he was transported to a "P.O.C. cell"[2] on March 17, 2024, "to detox" after being "accused of smoking in [his] cell." See (Doc. No. 9 at 5). The next day, he was transferred from the "P.O.C. cell" to "a regular restricted housing unit [b]lock cell . . . ." See (id.). While being transported to this new cell, Aycock was informed that "two correction [sic]

---

[2] Aycock does not define what "P.O.C." means in his amended complaint. It appears that he is referring to a "psychiatric observation cell." See, e.g., Hill v. Harry, No. 24-cv-01393, 2025 WL 1238368, at *1 (M.D. Pa. Apr. 29, 2025) (abbreviating "psychiatric observation cell" as "POC"). Regardless, this cell is not the cell where the events at issue in the amended complaint occurred.

officers went to the hospital because of [his] smokey cell." See (id.).  After hearing this, Aycock

asked to not be placed in this new cell because it was "isolated and the only cell [where he could

not] see the [television]."  See (id.).  This request was denied "because of what happened to the

[two (2)] correctional officers."  See (id.).

Throughout the night on March 18, 2024, Aycock was not "given property or basic

property like toilet paper, linen, [and] soap . . . ."  See (id.).  The cell's toilet also did not work,

and he could not view the television from the cell.  See (id.).  Aycock was also told to "cover up

[his] cell if [he] has a problem because . . . they wanted to spray and kill [him] because [of] the

officers that went to the hospital."[3]  See (id.).  "They" also told Aycock that "[he]'ll be a bitch if

[he] dont [sic] do it," which Aycock interpreted as their attempt to "aggressively make [him]

react so this could happen."  See (id.).  Aycock also avers that the cell "was a [sic] isolated cell

use [sic] purposely for inmates to react so they could use force . . . ."  See (id.).

On the morning of March 19, 2025, Husted told Aycock to "watch whats [sic] going to

happen to [him] for playing games and putting [Husted's correctional officers] in the hospital."

See (id.).  Aycock points out that he "already had a dislocated shoulder from them," and he was

forced to lay down in the cell without "basic necessities."  See (id. at 6).

Based on these allegations, Aycock indicates that he "suffered further injury to [his]

dislocated shoulder [and] psychological injury to [his] mental health [due to] having to go

through this type of incident in a life or death situation not knowing whats [sic] going to

happen."  See (id.).  For relief, Aycock seeks compensatory and punitive damages.  (Id.)

---

[3]  According to Aycock, covering up the cell allows "them" "to come in and . . . have force
use[d] against you."  See (id.).

## II.      LEGAL STANDARDS

### A.      Screening the Amended Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)

Under 28 U.S.C. § 1915A, this Court must "review . . . a[n amended] complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a).  If an amended complaint fails to state a claim upon which relief may be granted, the Court must dismiss the amended complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a[n amended] complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a[n amended] complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a[n amended] complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the amended complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This plausibility standard requires more than a mere possibility that the defendant is

liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of an amended complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their amended] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se amended complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se amended complaint, the court will "apply the relevant legal principle even when the amended complaint has failed to name it." See Mala, 704

F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the

same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at

245).

B.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for

violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.

This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which

"to vindicate violations of federal law committed by state actors."  See Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S.

273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  West v. Atkins, 487

U.S. 42, 48 (1988).

III.    DISCUSSION

A.    Screening of Aycock's Amended Complaint

The Court has thoroughly reviewed Aycock's allegations and legal claims in his amended

complaint.  As explained below, Aycock fails to sufficiently allege Defendants' personal

involvement in any constitutional violation.  Moreover, even if Aycock averred Defendants'

personal involvement, he does not plausibly allege any violation of his constitutional rights.

### 1.    Defendants' Personal Involvement

A plaintiff asserting a Section 1983 claim must allege the personal involvement of each defendant in the alleged constitutional violation; in other words, the plaintiff must state how each defendant was involved in the events and occurrences giving rise to the claims in the operative complaint.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Here, except for one allegation pertaining to what Husted allegedly said to him on the morning of March 19, 2024 (Doc. No. 9 at 5), Aycock does not specifically plead facts relating to which Defendants, if any, were involved any alleged constitutional violations.  He neither mentions Johnson, Bloom, or Steincamp by name in the factual allegations or legal claims portions of his complaint, see (id. at 5–6), nor uses the terms "defendant" or "defendants" in those sections.  See (id.).[4]  Instead, Aycock uses personal pronouns such as "they" and "them" to refer to the actors who allegedly wronged him.  See (id. at 5).  As such, Aycock's averments fail to plausibly allege that Johnson, Bloom, and Steincamp were personally involved in the alleged wrongs or even that Husted was personally involved in any event other than the one act on March 19, 2024.  See Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (explaining that Section 1983 defendants "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation

---

[4]  The use of the words "defendant" or "defendants" would likely have been insufficient in any event.  See, e.g., Lawal v. McDonald, 546 F. App' x 107, 113 (3d Cir. 2014) (unpublished) (concluding that the district court did not err in determining that the plaintiff's "repeated and collective use of the word 'Defendants' 'fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").

which [they] neither participated in nor approved"); see also Van Tassel v. Piccione, 608 F.

App'x 66, 69 (3d Cir. 2015) (unpublished) (concluding that district court properly dismissed

plaintiff's Section 1983 claims against certain defendants because she "failed to allege facts upon

which liability could be based for each of those defendants"). Therefore, because Aycock's

allegations do not identify in any meaningful way the specific acts or omissions of Johnson,

Bloom, and Steincamp that caused any violation of his rights, the Section 1983 claims against

these Defendants must be dismissed. In addition, Aycock's Section 1983 claims against Husted,

other than for Husted's alleged comment on March 19, 2024, must be dismissed for lack of

personal involvement.

### 2. Eighth Amendment Conditions of Confinement

Although most of Aycock's Section 1983 claims must be dismissed due to his failure to

sufficiently allege Defendants' personal involvement in any constitutional violations, the Court

will address those claims because they directly affect whether to grant him leave to file an

amended complaint. The Court begins with Aycock's Eighth Amendment conditions-of-

confinement claim.

A plaintiff advancing an Eighth Amendment conditions of confinement claim must allege

facts showing that: (1) they suffered a "sufficiently serious" deprivation; and (2) the prison

official defendant had a sufficiently culpable state of mind. See Clark v. Coupe, 55 F.4th 167,

179 (3d Cir. 2022) (quoting Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020)). The first

element is an objective standard requiring allegations that the plaintiff was denied "the minimal

civilized measures of life's necessities." See id. (quoting Wilson v. Seiter, 501 U.S. 294, 299

(1991)). It is not enough to allege for a plaintiff to allege that they were uncomfortable. See id.

Rather, the plaintiff must allege that the conditions of their confinement posed a "substantial risk

of serious harm" to their health or safety.  See id. (quoting Farmer v. Brennan, 511 U.S. 825, 834

(1994)).  The second element is subjective and requires allegations that the defendant was

deliberately indifferent to a substantial risk of serious harm to the plaintiff's health or safety.  See

id. (citing Farmer, 511 U.S. at 834).  This requires allegations that the defendant was aware of

the risk and disregarded it.  See id. (citing Beers-Capitol v. Wetzel, 256 F.3d 120, 133 (3d Cir.

2001)).

     In this case, Aycock's allegations pertaining to his conditions of confinement fare no

better than the allegations in his original complaint because he has failed to allege that he

suffered from a sufficiently serious deprivation or that each Defendant had a sufficiently

culpable state of mind.  As explained previously, his assertion that Defendants violated his

Eighth Amendment right to be free from cruel and unusual punishment by placing him in a cell

without a view of the television for what appears to be no more than approximately one (1) day

is insufficient to allege a plausible Eighth Amendment violation.  See Fantone v. Herbik, 528 F.

App'x 123, 128 n.5 (3d Cir. 2013) (unpublished) (agreeing with district court that prison officials

depriving prisoner of access to a television for forty-six (46) days was insufficient to state a

plausible claim under the Eighth Amendment); Morse v. Harry, No. 24-cv-01468, 2024 WL

4593000, at *3 (M.D. Pa. Oct. 28, 2024) (concluding that prisoner's claim that his cell, inter alia

lacked "'media stimulation' for a period of 24 hours" was "nothing more than [a] trivial

annoyance[] that do[es] not violate the Eighth Amendment" (citation omitted)), appeal

dismissed, 2025 WL 1556003 (3d Cir. Mar. 24, 2025); Hutchinson v. Northampton County

Prison, No. 22-cv-02652, 2023 WL 205103, at *6 (E.D. Pa. Jan. 17, 2023) (dismissing prisoner's

Eighth Amendment conditions of confinement claim because "the absence of a television or

vending machine does not constitute the denial of 'the minimal civilized measure of life's

necessities" (citations omitted)); <u>Clinton v. Camp Hill Prison</u>, No. 11-cv-02200, 2012 WL

315279, at \*5 (M.D. Pa. Jan. 11, 2012) ("[C]onsistent with settled case law, [an inmate] has not

constitutional right to watch cable TV in [their] cell." (alterations in original)), <u>report and</u>

<u>recommendation adopted</u>, 2012 WL 315098 (M.D. Pa. Feb. 1, 2012).  Similarly, Aycock's

allegation that he did not have toilet paper or soap in his cell for a temporary period does not rise

to an Eighth Amendment violation.  <u>See</u> <u>Easley v. Tritt</u>, No. 17-cv-00930, 2021 WL 978815, at

\*11 (M.D. Pa. Mar. 16, 2021) ("The Third Circuit has noted that the temporary denial of toilet

paper does not violate the Eighth Amendment." (citing <u>Brooks v. Bledsoe</u>, 682 F. App'x 164,

170 (3d Cir. 2017) (unpublished); <u>Freeman v. Miller</u>, 615 F. App'x 72, 77 (3d Cir. 2015)

(unpublished))).  Moreover, Aycock's allegation that his cell lacked a mattress does not

constitute an Eighth Amendment violation.  <u>See id.</u> ("[T]he denial of clothing and a mattress for

short periods of time does not rise to the level of an Eighth Amendment violation." (citations

omitted)); <u>see also</u> <u>Freeman</u>, 615 F. App'x at 77 (concluding that denial of clothing and mattress

to inmate for seven (7) days did not violate the Eighth Amendment); <u>Adderly v. Ferrier</u>, 419 F.

App'x 135, 139–40 (3d Cir. 2011) (unpublished) (same).  Even Aycock's allegation about a

toilet that did not work, <u>see</u> (Doc. No. 9 at 5), is unaccompanied by any allegation that it resulted

in unsanitary conditions in his cell outside the lack of access to toilet paper.  Overall, Aycock

does not allege sufficient facts demonstrating that he was denied the minimal civilized measures

of life's necessities over the course of possibly a day and, even if he did, he does not allege facts

showing that Defendants were deliberately indifferent to a substantial risk of serious harm to his

health or safety during that period.  Accordingly, the Court will dismiss Aycock's Eighth

Amendment conditions-of-confinement claim.

11

### 3.     Eighth Amendment Verbal Threats

As in his original complaint, Aycock asserts in his amended complaint that because he supposedly caused two (2) correctional officers to go to the hospital, he was asked to cover up his cell so that correctional officers would have an excuse to enter it, spray him, and kill him. (Doc. No. 9 at 5, 6.)  Aycock also alleges that Husted told him to "watch whats [sic] going to happen to [him] for playing games and putting [Husted's correctional officers] in the hospital." See (id. at 5).  These allegations are insufficient to plead plausible Section 1983 Eighth Amendment claims against Defendants.

When dismissing this identical claim in his original complaint, the Court informed Aycock that "[i]t is well-settled that the use of words, no matter how violent or harsh, do not amount to a violation of the prisoner's civil rights by [a correctional] officer."  See Svirbley v. McGinley, No. 17-cv-2292, 2018 WL 638475, at *3 (M.D. Pa. Jan. 31, 2018) (citations omitted); see also Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (unpublished) (indicating that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under [Section] 1983" (citations omitted)); Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (unpublished) (concluding that state prison employees were entitled to summary judgment on plaintiff's claim that they "threatened him by telling him to give up his legal campaign[] and by remarking that he was a marked man and that his days were numbered," because "verbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment" (citations omitted)); Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004) (unpublished) ("It is well established that '[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under [Section] 1983.'" (first alteration in original) (quoting Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996))); McBride v.

Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (concluding that defendant correctional officer's

threat to spray inmate with mace did not violate Eighth Amendment); Fennell v. Horvath, No.

18-cv-04870, 2019 WL 161733, at *4–5 (E.D. Pa. Jan. 9, 2019) (dismissing inmate's claim that

correctional officer violated his Eighth Amendment rights by, inter alia, threatening to kill his

family and use a mace gun against him" because he did not also "allege injury or physical

damage").  However, "[v]erbal threats, with some reinforcing act accompanying them, may state

a constitutional claim."  See Lewis v. Wetzel, 153 F. Supp. 3d 678, 698 (M.D. Pa. 2015).  "For

example, a viable claim has been found if some action taken by the defendant escalated the threat

beyond mere words."  Id. (citations omitted).

Here, presuming that Aycock was threatened, Aycock does not allege that anyone,

including Defendants, committed any reinforcing act accompanying threats to harm or kill him.

Moreover, any threats other than Husted's threat on March 19th were conditioned on Aycock

acting in a way that was against his own self-interest and not in a manner in which he expressed

an inclination to act, i.e., covering his cell, which Aycock apparently never did anyway.  Overall,

Aycock fails to state a plausible Eighth Amendment claim against any Defendant based on their

alleged instigations or expressions of desire to harm him.[5]

---

[5] The Court recognizes that in attempting to assert a plausible Eighth Amendment claim, Aycock
cites to Lisle v. Welborn, 933 F.3d 705, 716–17 (7th Cir. 2019), a decision by the Seventh
Circuit Court of Appeals in which it reversed a district court decision granting summary
judgment on a plaintiff prisoner's claim that a prison nurse was deliberately indifferent to their
risk of suicide.  See (Doc. No. 9 at 6).  However, to the extent that Lisle would serve as
persuasive authority in this case, it is easily distinguishable.

As a Seventh Circuit decision, Lisle is not binding authority in this case.  Nevertheless, both the
Third Circuit Court of Appeals and at least one district court in the Third Circuit have seemingly
recognized Lisle as persuasive authority.  See Hill v. Wetzel, No. 21-3009, 2022 WL 5422329, at
*3 (3d Cir. Oct. 7, 2022) (concluding that district court erred in granting defendants' motion to
dismiss the prisoner plaintiff's Eighth Amendment claim against the prison doctor because the
doctor "effectively encouraged [the plaintiff] to kill himself" even though the plaintiff "had

B.      Leave to Amend

Having determined that Aycock's Section 1983 claims in his amended are subject to

dismissal, the Court must determine whether to grant him leave to file a second amended

complaint.  Courts should generally give leave to amend but may dismiss an amended complaint

with prejudice where leave to amend would be inequitable or futile.  See Fletcher-Harlee Corp.

v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases

district courts must offer amendment—irrespective of whether it is requested—when dismissing

a case for failure to state a claim unless doing so would be inequitable or futile."); see also

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not

seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must

inform the plaintiff that [they have] leave to amend within a set period of time, unless

amendment would be inequitable or futile.").  "In determining whether [amendment] would be

---

been transferred to the POC because of threats of self-harm [and] had objectively serious
psychological needs" (citing Lisle, 933 F.3d at 717)); Gorrio v. Terra, No. 23-cv-04366, 2023
WL 8373167, at *11 (E.D. Pa. Dec. 4, 2023) (discussing that "[i]n the context of vulnerability to
suicide, taunting remarks [from defendant correctional officials to the prisoner plaintiff who had
just swallowed a razor, telling the plaintiff that they hoped the razor cut him open and he died]
could support an inference of deliberate indifference" (citing Lisle, 933 F.3d at 717)).  Yet, even
if the Court applied Lisle here, it would not alter the decision to dismiss Aycock's Eighth
Amendment claim based on any alleged threats to him.

The facts alleged in Aycock's amended complaint do not come close to the extreme factual
scenario presented in Lisle.  Although Aycock describes himself as someone with "mental health
issues," see (Doc. No. 9 at 6), he does not allege that he was on suicide watch or that he
expressed intent to commit suicide to anyone, including Defendants.  In other words, Aycock
does not aver that anyone was trying to get him to fulfill his desire to commit self-harm.  Rather,
he acknowledges that he did not want to do what "they" were allegedly suggesting that he do,
namely, cover up his cell so they would have a reason to enter it and use force on him.  See (id.
at 5).  Moreover, even if the statements made to Aycock were unprofessional, they were limited
to one day and unaccompanied by any corresponding acts.  Overall, the allegations in the
amended complaint do not meet the type of extreme situations where some courts have
recognized that verbal harassment rises to the level of an Eighth Amendment violation.

14

futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the Court's analysis above as well as the factual nature of Aycock's claims, the Court finds that granting Aycock leave to file a second amended complaint would be futile. Even if he were to specify which Defendants, if any, are involved with his alleged constitutional violations in a second amended complaint, his potential factual allegations would be insufficient to plead plausible Section 1983 Eighth Amendment claims. The Court previously dismissed almost identical factual allegations in Aycock's original complaint only to have him replead those allegations in his amended complaint. Aycock has now had ample opportunity to describe the conditions of his cell as well as the alleged conduct of Defendants and has not set forth viable Eighth Amendment claims. Accordingly, the Court will not grant Aycock leave to file a second amended complaint and will dismiss the amended complaint with prejudice.[6]

## IV.    CONCLUSION

For the reasons stated above, the Court will dismiss the amended complaint with prejudice and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[6] The Court notes that Aycock references a dislocated shoulder in his amended complaint. See (Doc. No. 9 at 5, 6). Aycock has another civil action pending in this Court in which he claims that certain correctional officers injured his shoulder. See Aycock v. Smithen, et al., No. 24-cv-02112 (M.D. Pa. filed Dec. 6, 2024), ECF No. 7. As such, Aycock will not receive leave to amend his complaint to include factual allegations relating to his shoulder injury.